**Robert W. COOK and David L. Marting, Plaintiffs-Appellees,**

v.

**PENSION PLAN FOR SALARIED EMPLOYEES OF CYCLOPS CORPORATION and Robert A. Kushner and Donald L. Mitchell and William D. Dickey and Cyclops Corporation, Defendants-Appellants.**

No. 85–3011.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1985.

Decided Sept. 25, 1986.

Rehearing and Rehearing En Banc Denied Nov. 18, 1986.

**866**

Donald E. Seymour, argued, Kirkpatrick & Lockhart, Pittsburgh, Pa., Daniel O. Berger, Paxton & Seasongood, Cincinnati, Ohio, Larry Glassmann, for defendants-appellants.

R. William Eisnaugle, Glenn B. Redick, argued, Columbus, Ohio, for plaintiffs-appellees.

Before ENGEL and KRUPANSKY, Circuit Judges, and SUHRHEINRICH,* District Judge.

ENGEL, Circuit Judge.

The Pension Plan for Salaried Employees of Cyclops Corporation ("the Plan"), the members of the Pension Board as administrators of the Plan and the Cyclops Corporation appeal a district court judgment reversing the administrators' interpretation of the Plan and holding that plaintiffs are entitled to immediate pension benefits under the Rule of 65. Under this rule an employee who has been employed at Cyclops for a continuous 20–year period, whose employment terminates due to, among other reasons, plant closure and whose combined age and continuous years of service equal or exceed 65 is entitled to immediate payment of his or her pension benefits. Plaintiffs sought immediate benefits under the Rule of 65 and the Plan administrators concluded that they were ineligible.

Plaintiffs brought suit in the United States District Court for the Southern District of Ohio under section 1132(a)(1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982), to recover the pension benefits claimed to be due them under the Plan. In a Memorandum and Order dated October 5, 1984, the district court ruled that the administrators' denial of benefits "ignores the plain wording of the Plan and therefore must be found to be arbitrary and capricious." *Cook, et al., v. Pension Plan for Salaried Employees of Cyclops Corp. et al.*, Nos. C–1–82–615/C–1–82–616, slip op. (S.D.Ohio October 5, 1984).

---

* Honorable Richard F. Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation.

We conclude that the Plan provisions construed by the administrators contain an ambiguity, and that the provisions are susceptible of the construction given by the administrators. Because the administrators' interpretation is rationally related to a valid plan purpose, we hold that the courts are obligated as a matter of law to respect it. We therefore reverse.

I.

Appellees Robert W. Cook and David L. Marting were terminated in 1980 when the Cyclops Corporation closed its Portsmouth, Ohio, plant. They petitioned the Pension Board of the Pension Plan for Salaried Employees of the Cyclops Corporation for treatment under the Rule of 65. At the time of the plant's closure, Cook was 42 years and 8 months old and had been employed at Cyclops for 20 years and 6 months. His combined age and continuous service was 63 years and 2 months. Marting was 42 years and 6 months old and had been employed at Cyclops for 20 years and 6 months. Marting's combined age and service was 63 years. Cook and Marting would be entitled to count an additional 2 years toward their Rule of 65 eligibility if they could tack on the 12–month period to their ages and their years of service under section 10.1(g) of the Plan. Section 10.1(g) provides:

Notwithstanding any other provision in (e) of this Section 10.1, an Employee shall not be deemed to incur a break in continuous service until the expiration of the 12–consecutive month period following the date the Employee was first absent from work for any reason other than retirement, quit or discharge, during

which he did not perform an Hour of Service for the Company or any subsidiary or affiliated company. (Amended effective August 1, 1977).

Section 10.1(g), Pension Plan for Salaried Employees of Cyclops Corp. (eff. January 1, 1976, to July 31, 1980).[1]

By its terms, section 10.1(g) does not apply to breaks in continuous service when such breaks are due to "retirement, quit or discharge." The issue before the district court was whether the plan administrators acted within their authority in determining that termination for plant closure was a discharge as contemplated by section 10.1(g).

A. The Reasoning of the Pension Board.

The Pension Board's rationale for its refusal to treat plaintiffs' terminations under section 10.1(g) of the Plan is set forth in letters to each plaintiff written on behalf of the Pension Board by Robert A. Kushner, secretary of the Board, dated October 20, 1981. Mr. Kushner stated in his letters that discharge due to plant closure is an event constituting an immediate break in continuous service under the Plan's "elapsed time" method of crediting service.[2] Under this method, an employee's service commences on the date he or she first performs an hour of service for the employer and terminates on the date he or she "severs from service."

The Kushner letters quote the definition of severance contained in the Internal Revenue Service regulations governing ERISA-qualified plans:

The date the employee severs from service is the earlier of the date the

1. Cook and Marting contend that if section 10.1(g) is applicable to their pension requests, they are entitled to two additional years toward Rule of 65 eligibility. Presumedly, their position is that the tacking of the additional 12–month period applicable to computation of continuous service also adds a 12–month period to the employee's age. The Plan did not dispute this position before the district court or before this court.

2. Computation of service under the elapsed time method is authorized under 29 C.F.R. § 2530.-

200 b–9 (repealed 1980). The elapsed time method is an alternative to the "hours of service" method. See 29 C.F.R. § 2530.200 b–2 (1985). Under the elapsed time method, service is determined for pension computation purposes by the "total period of time which elapses while the employee is employed (i.e., while the employment relationship exists) with the employer maintaining the plan, regardless of the actual number of hours of service completed during such period of time."

employee quits, is discharged, retires or dies, or the first anniversary of the date the employee is absent from service for any other reason (e.g., disability, vacation, leave of absence, layoff, etc.). Thus, for example, if an employee quits, the severance from service date is the date the employee quits. On the other hand, if an employee is granted a leave of absence (and if no intervening event occurs), the severance from service date will occur one year after the date the employee was first absent on leave, and this one year of absence is required to be taken into account as service for the employer or employers maintaining the plan. Because the severance from service date occurs on the earlier of two possible dates (i.e., quit, discharge, retirement or death or the first anniversary of an absence from service for any other reason), a quit, discharge, retirement or death within the year after the beginning of an absence for any other reason results in an immediate severance from service. Thus, for example, if an employee dies at the end of a four-week absence resulting from illness, the severance from service date is the date of death, rather than the first anniversary date of the first day of absence for illness.

26 C.F.R. § 1.410(a)–7(a)(2)(ii).

In his testimony before the district court, Mr. Kushner, speaking for the Pension Board, stated that the addition in 1977 of section 10.1(g) was an attempt to incorporate the elapsed time method into the pension plan. In response to the question why the Board determined that section 10.1(g) did not apply, Mr. Kushner stated:

Section 10.1(g) is in the pension plan in response to the Department of Labor regulations relating to the so called elapsed time concept. And the elapsed time concept is one which determines what the length of employment is. It starts with the date of employment of an individual, and terminates at the point in time where there is a termination of the employment relationship. That interval is measured and that determines the employment period. There are several circumstances which make it very clear as to when the employment period terminates. For example, a quit, a retirement, a discharge, death, those are very clear, they are finite, they are ascertainable. There are other circumstances where it is not clear at what point in time the employment relationship terminates and the Department of Labor promulgated a set of regulations to deal with those socalled [sic] gray areas. If an individual is off on a leave of absence, if he's off on a disability, if he's off on a vacation at no point in time is there a termination of the employment relationship. And the Department of Labor established an arbitrary full 12 month period and they said, if someone is within that socalled [sic] gray area, leave of absence, vacation, disability, what have you, there will be no termination of the employment relationship, absent some intervening cause, until the expiration of a 12 month period. And it was in response to that Department of Labor regulation that 10.1(g) was put into the Cyclops Pension Plan.

Later in his testimony, Mr. Kushner candidly admits that section 10.1(g) is inconsistent with section 10.1(e) which enumerates situations constituting breaks in continuous service[3] and lists "discharges or other termination by action of the company" separately from "termination due to

---

**3.** Section 10.1(e) provides:

An Employee shall incur a break in continuous service upon:
(1) quit;
(2) discharge or other termination of employment by action of the Company;
(3) failure to return to work upon expiration of a leave of absence where due notice has been given by the Company;

(4) termination due to permanent shutdown of a division, plant, office or department, or subdivision of any of them;
(5) absence due to a layoff or a physical disability which continues for more than 2 years; provided, however, that
    (i) absence in excess of 2 years due to a compensable physical disability incurred during course of employment shall not break continuous service, if the Participant is re-

permanent shutdown of a division, plant, office or department." He explains that section 10.1(g), added to the Plan in 1977, is a standard provision in steel industry labor contracts and was not drafted specifically to conform to the Cyclops Plan.

The language is in there [section 10.1(g)] and it is admittedly a redundancy of [section 10.1(e)(2)], but it is in there because that language is also used in 70/80 Pensions, it is used in Rule of 65 Pensions and it stems from the negotiations of those types of pensions with the bargaining unit. It is industry language, if you will. The steel industry negotiates labor contracts between the union and so called coordinating companies. The number has changed over time. It was as many at one time as perhaps a dozen companies, more recently it's been 8 or 7 companies. And they negotiate, among other things, pension provisions. We are what is commonly referred to as a me too company. We do not sit in the negotiations but we do pick up the same sorts of benefits and pension changes. We pick up the same language for the hourly employees. We typically take those benefits and put them into our salary pension plan as well and we follow the same language because we don't want our employees to feel, by changing the language, we've given them something different from that which the bargaining unit has. So it is a redundancy to be sure, but we put it in because that is the format that is followed by the steel industry.

### B. The Reasoning of the District Court.

The district court rejected the interpretation given section 10.1(g) by the Board. It

turned to work within 30 days after final payment of statutory compensation for such disability or after the end of the period used in calculating a lump-sum payment, and

(ii) if a person absent on account of layoff or physical disability returns to work with the Company after an absence in excess of 2 years but within the period equal to his length of continuous service prior to the break (but not more than 5 years), the break in continuous service shall be removed;

noted the Board's reliance on the IRS regulations but stated that the analysis must begin with the language of the Plan itself. The district court then held that when section 10.1(g) is read in conjunction with section 10.1(e), "it becomes clear that the Plan differentiates between a discharge and termination due to a plant shutdown." The district court noted the separate treatment given the two situations in this section and concluded that terminations due to plant shutdown are not intended to come within the meaning of discharge in section 10.1(g). The district court concluded

[t]hus, it is clear that under the Plan a break in service by reason of plant shutdown is separate and distinct from one incurred due to a discharge. Yet the Board interpreted § 10.1(g) in a way which merges the two into one concept. By doing so, the Board directly contradicted the preceding section, § 10.1(e). Hence the Board's interpretation defies the express language of the Plan itself.

*Cook*, slip op. at 5. The district court found that because the terminations of Cook and Marting were due to plant shutdown, such terminations were not discharges within the meaning of section 10.-1(g), and that therefore Cook and Marting were entitled to treatment under section 10.1(g) enabling both to come within the Rule of 65 and to receive immediate pension payments.

### II.

The rule in this and other circuits is that judicial review of decisions by Plan administrators to deny pension benefits is limited to a determination of whether that denial

(6) unauthorized absence from scheduled work for 7 calendar days and failure to show good cause for the absence and/or failure to report off. (The Company shall give due notice of the intention to terminate the Employee for such matters); or

(7) failure to report for and begin work upon recall from layoff. (The Company shall give due notice of recall)....

Section 10.1(e), Pension Plan for Salaried Employees of Cyclops Corp.

was arbitrary or capricious. *Moore v. Reynolds Metal Company Retirement Program for Salaried Employees,* 740 F.2d 454, 457 (6th Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Rhoton v. Central States Southeast and Southwest Areas Pension Fund,* 717 F.2d 988, 989 (6th Cir.1983); *VanGunten v. Central States Southeast and Southwest Areas Pension Fund,* 672 F.2d 586, 587 (6th Cir.1982); *see also Dennard v. The Richards Group, Inc.,* 681 F.2d 306, 313 (5th Cir.1982) (applying the arbitrary and capricious standard, and compiling cases from other circuits which apply the traditional standard for review of trusts). The courts apply this limited scope of review to avoid "excessive judicial interference with plan administration." *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). The Second Circuit has expressed the rule regarding ambiguous language in pension plans this way:

> Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.

*Miles, supra,* 698 F.2d at 601 (citing *Lowenstern v. International Ass'n of Machinists and Aerospace Workers,* 479 F.2d 1211, 1213 (D.C.Cir.1973) (pre-ERISA case which applies the same standards to decisions of pension administrators as do courts interpreting ERISA)).

The Plan argues that the district court applied a de novo standard of review by rejecting the interpretation given by the Board and applying its own interpretation of the provisions under review. The Plan concedes that these provisions are, at least, susceptible to two interpretations: that given by the Board and that given by the district court. However, it contends that where such ambiguity exists, the Board's interpretation should be upheld even though the court disagrees with it, so long as the Board's interpretation is rationally related to a valid plan purpose and is not contrary to the plain language of the Plan. *See Gaines v. Amalgamated Insurance Fund,* 753 F.2d 288, 289 (3d Cir.1985). We agree.

The case at bar presents the very situation contemplated by the rule expressed in the cases cited above. There is no indication whatever in section 10.1(g) of what types of terminations are "discharges" within the meaning of that term as used in that section. The action taken by the Board is certainly consistent with the purpose of section 10.1(g) as stated by the Board. The Board interpreted section 10.-1(g) as providing a convenient, albeit somewhat arbitrary, proxy for an employee's termination date where such date would otherwise be difficult or impossible to determine for pension purposes. Here the dates are easily ascertainable.

While there clearly are employment-terminating events other than "retirement, quit or discharge" which occur at a specific, determinable time, the Plan's terms do not identify them all. This, however, does not bind the Board as a matter of law to a requirement of extending an additional year of service to all employees whose employment is terminated for other reasons.

The district court accepted the argument that the Board's interpretation of section 10.1(g) contravenes the express language of the Plan. While the two provisions when read together are unclear as to whether a termination due to plant closure is a discharge within the meaning of section 10.1(g), a fair reading of them does not preclude the result reached by the Board. The Pension Board opted to resolve the ambiguity based on an interpretation of the Plan language which is neither inconsistent with the provisions here at issue nor inconsistent with a valid Plan purpose.

We readily concede that the district court's attempt to reconcile the inconsistency in the two sections was a rational one. Our conclusion in this appeal, however, rests on our determination that the Board's construction of section 10.1(g) is also ra-

tional. We note that there is no indication in the record that the Board attempted to construe section 10.1(g) in harmony with section 10.1(e). Although such an attempted reconciliation may often be a useful tool in documentary interpretation, it is enough for us to observe that since "discharge" is susceptible to different meanings in the two sections the Board had discretion to interpret them differently; it was not bound to attempt to equate them in all events. The language used and the effective date in section 10.1(g) correspond with the I.R.S. regulation governing the elapsed time method. Each states that the additional 12–month period will apply when the employee severs from employment for reasons other than retirement, quit, discharge or death. The elapsed time regulation was promulgated on December 28, 1976, and section 10.1(g) was added to the Plan on August 1, 1977. It is clear to us that the addition of 10.1(g) to the pension plan was an attempt to incorporate that method, and that in the course of that attempt, the drafters of the amendment to the plan did not succeed in making its language entirely consistent with the preexisting provisions relating to the determination of continuous service. Mr. Kushner's testimony provides a convincing justification for the apparent lack of consistency. But the Board has offered a reasoned explanation of its decision made concerning the application of an ambiguous plan provision, and in accordance with the deference accorded plan administrators under ERISA we must uphold that decision.

Whether the Board acted in bad faith is also a factor in considering whether it acted arbitrarily or capriciously. *Dennard,* 681 F.2d at 314. The record in this case does not reflect any bad faith conduct on the part of the Board in denying Cook and Marting the benefit of the Rule of 65. Cook and Marting complain that the local pension representatives did not inform them of the 1977 amendment to the Plan which added section 10.1(g). Instead, when Cook and Marting applied for benefits, they were informed that they were only entitled to a deferred vested pension. This

action by the Board, however, does not in any way constitute bad faith. It appears from all that is before the court that the Board reasonably decided that Cook and Marting were entitled to a deferred vested pension. Therefore, it was under no obligation to inform them of the existence of a pension to which they were not entitled.

## III.

Reference to section 10.1(g) does not present a clear answer to the question presented by this case. Whether terminations due to plant closure are discharges within that section could be rationally resolved on the basis adopted by the Pension Board or the basis argued by plaintiffs and adopted by the district court. The case law is uniform, however, in holding that, under such circumstances, the deference to be accorded the Board in the administration of its plan requires the court to stay its hand in the interest of efficient pension administration. In this case, the district court exceeded the scope of review of the Board's denial of benefits. The judgment of the district court is therefore RE-VERSED and this case is REMANDED for reinstatement of the decision of the Pension Board.