847 F.2d 329
 56 USLW 2700, 9 Employee Benefits Ca 2194
 Frank ROSS; Dan Weber; R. Stone; Gus Callitsis; Don
Heidy; Hal Grant; Tommie Gang; Earl Stauffer
and C. Crawford, et al., Plaintiffs-Appellants,
v.
PENSION PLAN FOR HOURLY EMPLOYEES OF SKF INDUSTRIES, INC.,
Defendant-Appellee.
 No. 87-3625.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 22, 1988.
Decided May 26, 1988.
 
 Terrence P. Kessler, argued, Canton, Ohio, John J. Rambacher, for plaintiffs-appellants.
 Graeme W. Bush, argued, Caplin & Drysdale, Washington, D.C., for defendant-appellee.
 Before LIVELY and GUY, Circuit Judges, and COHN, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiffs appeal the district court's grant of summary judgment in favor of the defendant Pension Plan. Because we conclude that the benefits which the Pension Plan provides in the event of a plant shutdown are not benefits protected under section 204(g) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1054(g), and that, therefore, plaintiffs are not entitled to require payment of those benefits under section 204(g), we affirm.
 
 I.
 
 2
 The fifty-two named plaintiffs were participants in defendant Pension Plan for Hourly Employees of SKF Industries, Inc. (the Plan), and were employees of the SKF Tapered Bearings Division of SKF Industries, Inc., at its Massillon, Ohio, facility (the Massillon facility). On December 23, 1985, the Massillon facility was permanently closed.
 
 
 3
 Under the terms of section 4.05 of the Plan, participants who meet certain age and service requirements at the time of a plant closing become entitled to special "plant shutdown" benefits. According to the Plan, any participant whose active service ceases by reason of a permanent shutdown of the plant, and who at the date of the cessation of operations has at least 15 years of Benefit Service (as defined in the Plan) and either (a) is at least 55 years old or (b) has a combined age and years of Benefit Service equal to 80 or more, is entitled to plant shutdown benefits. These benefits entail the immediate payment of pension benefits equal to the amount a participant would otherwise be paid at normal retirement age.
 
 
 4
 Section 6.01 of the Plan provides that a participant who terminates employment (other than by death or retirement) with at least 10 years of Vesting Service (as defined in the Plan) is entitled to a deferred vested benefit commencing at or after age 55. In accordance with section 6.01, individuals who qualify for deferred vested benefits are entitled to make one of two elections regarding the manner of payment of the deferred vested benefits. If a participant waits to commence receiving benefits until age 65 (the normal retirement age under the Plan), he is entitled to normal retirement benefits paid in the form of an annuity with monthly payments over the life of the participant, or an actuarially equivalent joint and survivor annuity over the lives of the participant and his or her spouse. The amount of the payments is determined under section 5.03 of the Plan. Alternatively, the Plan provides for a participant with at least 10 years of Benefit Service and who is at least age 55 to receive a "55/10 retirement" benefit. The 55/10 benefit is calculated as an actuarial reduction of the amounts that would have been payable at normal retirement age to take account of the participant's earlier retirement.
 
 
 5
 At the time of the Massillon facility shutdown, each plaintiff had at least 15 but fewer than 30 years of Benefit Service and was under age 55. No plaintiff had a combined age and years of Benefit Service equal to 80 or more. Plaintiffs were advised by the Plan administrator that they were ineligible for the plant shutdown benefits because they had neither attained age 55 nor had a combined age and years of Benefit Service equal to 80 or more at the time of the plant shutdown.[1] Although plaintiffs did not qualify for the immediate payment of the section 4.05 plant shutdown benefits, they nevertheless qualified for receipt of the section 6.01 deferred vested benefits. Regardless of whether these plaintiffs elect under section 6.01 to receive at age 55 the 55/10 retirement benefit, or wait until age 65 and receive normal retirement benefits under the section, these deferred vested benefits are lower in total value than the benefits which would be paid under the section 4.05 plant shutdown benefit provision.
 
 
 6
 On May 29, 1986, plaintiffs brought suit in the United States District Court, Northern District of Ohio, seeking a declaration of their right to receive benefits under the Plan's section 4.05 plant shutdown provision. The defendant Plan is an employee pension benefit plan as defined in ERISA, 29 U.S.C. Sec. 1001, et seq., and subject matter jurisdiction was properly invoked in the district court pursuant to 28 U.S.C. Sec. 1331. During the course of the proceedings below, the parties filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56, along with a stipulation as to the relevant facts.
 
 
 7
 Plaintiffs argued in their motion for summary judgment that despite the fact that they did not satisfy the combined age and years of the Benefit Service requirement set forth in section 4.05 of the Plan, in accordance with section 204(g) of ERISA, 29 U.S.C. Sec. 1054(g), they were entitled by law to receive the plant shutdown benefits. Defendant Plan, on the other hand, argued that it was entitled to summary judgment because plaintiffs had not attained the age and Benefit Service requirement specifically set forth in section 4.05 of the Plan, and because plaintiffs could not establish the requisite elements of a successful claim under section 204(g). The court below granted the Plan's motion for summary judgment and dismissed the action.
 
 II.
 
 8
 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The parties have stipulated to the relevant facts of this dispute. The issue before this court is whether, on the basis of the agreed upon facts and pursuant to section 204(g) of ERISA, plaintiffs are entitled to receipt of the plant shutdown benefits described in section 4.05 of the Plan.
 
 
 9
 Section 204(g) of ERISA reads in pertinent part as follows:
 
 
 10
 (g) Decrease of accrued benefits through amendment of plan.
 
 
 11
 (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan....
 
 
 12
 (2) For purposes of paragraph (1), a plan amendment which has the effect of--
 
 
 13
 (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
 
 
 14
 (B) eliminating an optional form of benefit,
 
 
 15
 with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy. The Secretary of Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in subparagraph (B) (other than a plan amendment having an effect described in subparagraph (A)).
 
 
 16
 The lower court granted summary judgment in favor of the Plan based on the court's finding that the Plan had not been amended and that, therefore, plaintiffs had failed to prove an essential element of their claim under section 204(g). See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof."). Although we agree with the district court that summary judgment in favor of the defendant was proper, we reach this conclusion based upon an analysis which differs from that employed by the district court.
 
 
 17
 The district court focused on the difficult question of whether the permanent shutdown of the Massillon facility constituted the equivalent of an amendment of the defendant Plan.[2] However, upon review of the language of section 204(g), its legislative history, and the body of law developed thereunder, we conclude that regardless of whether the permanent shutdown of the Massillon facility was the equivalent of a Plan amendment, the Plan section 4.05 plant shutdown benefits are not benefits which section 204(g) was intended to protect.
 
 
 18
 Section 204(g) prohibits plan amendments which result in a decrease of accrued benefits or which result in an elimination or reduction of early retirement benefits, retirement-type subsidies, or optional benefits.[3]
 
 
 19
 Reduction of accrued benefits by plan amendment has been prohibited by ERISA section 204(g) since the Act's inception in 1974. The term "accrued benefit" is defined by section 3(23) of ERISA to refer to an "annual benefit commencing at normal retirement age." 29 U.S.C. Sec. 1002(23).[4] Clearly, the defendant Plan section 4.05 plant shutdown benefit, which becomes available to certain employees "whose active service ... ceases by reason of a ... permanent shutdown of the plant ...," Plan Sec. 4.05 (emphasis added), is not accurately characterized as a "benefit commencing at normal retirement age," 29 U.S.C. Sec. 1002(23), and therefore is not an "accrued benefit" which is protected from decrease by amendment under section 204(g)(1). The question remains, however, whether the Plan section 4.05 plant shutdown benefit falls within the definition of an early retirement benefit, a retirement-type subsidy, or an optional form of benefit because section 204(g)(2) treats the elimination or reduction[5] of such benefits by amendment of a plan as "reducing accrued benefits," in violation of section 204(g)(1).
 
 
 20
 The terms "early retirement benefit" and "optional form of benefit" are not defined in the Retirement Equity Act which revised ERISA section 204(g) in 1984, adding these types of benefits to the protections afforded by section 204(g) against decrease by a plan amendment. Specific statutory definition of the terms is not necessary, however, in light of the plain and widely understood meaning of the terms. Early retirement benefits are generally benefits that become available upon retirement at or after a specified age which is below the normal retirement age, and/or upon completion of a specified period of service. An optional form of benefit is generally one that involves the power or right of an employee to choose the way in which payments due to him under a plan will be made or applied. The defendant Plan section 4.05 plant shutdown benefit becomes due and payable only to a participant whose active service ceases by reason of a permanent shutdown of the plant, and who at the date of such cessation of service has at least 15 years of Benefit Service and either (a) is at least 55 years old or (b) has a combined age and years of Benefit Service equal to 80 or more. Such a benefit is not one that falls within the category of either an early retirement benefit or an optional form of benefit.
 
 
 21
 The Retirement Equity Act also added "retirement-type subsidies" to the group of benefits protected under section 204(g) from reduction or elimination by plan amendment. In so doing, section 204(g)(2)(A) refers to "a retirement-type subsidy (as defined in regulations )" (emphasis added). Despite this parenthetical directive, the regulations do not define the term retirement-type subsidy. The legislative history of the Retirement Equity Act, however, specifically addresses the question of whether a plant shutdown benefit falls within the category of a retirement-type subsidy and specifically states that it does not.
 
 Retirement-type subsidy
 
 22
 The bill provides that the term "retirement type subsidy" is to be defined by Treasury regulations. The committee intends that under these regulations, a subsidy that continues after retirement is generally to be considered a retirement-type subsidy. The committee expects, however, that a qualified disability benefit, a medical benefit, a social security supplement, a death benefit (including life insurance), or a plant shutdown benefit (that does not continue after retirement age) will not be considered a retirement-type subsidy. The committee expects that Treasury regulations will prevent the recharacterization of retirement-type benefits as benefits that are not protected by the provision.
 
 
 23
 S.Rep. No. 575, 98th Cong., 2d Sess. 30, reprinted in 1984 U.S. Code Cong. & Admin. News 2547, 2576 (emphasis added).
 
 
 24
 Finally, we note that in order for a pension plan to qualify under ERISA, it must meet minimum vesting standards set forth in section 203, 29 U.S.C. Sec. 1053 (i.e., an employee with 10 years of service must have a nonforfeitable right to 100 percent of his accrued benefits derived from employee contributions). Section 6.01 of the Plan meets the vesting requirements of ERISA, and is the vehicle by which the plaintiffs have been awarded their right to deferred vested benefits commencing at or after age 55. In relation to the instant dispute, this protection is all that ERISA requires. The Plan's section 4.05 plant shutdown benefit appears in the Plan only as a result of the collective bargaining process. It is not a provision mandated by ERISA, and it is not a provision which falls within the intended scope of ERISA section 204(g).
 
 III.
 
 25
 Finally, five of the plaintiffs, who were between the ages of 52 and 55 at the time of the Massillon facility shutdown, argue that they were entitled to the Plan's section 4.05 plant shutdown benefits on additional grounds unrelated to their section 204(g) claim. These plaintiffs claim that they are entitled to an additional period of three years following the shutdown of the Massillon facility during which they may satisfy the age requirement for the section 4.05 plant shutdown benefit. Although the district court did not directly address this issue, dismissal of the case was nevertheless proper because this claim is without merit.
 
 
 26
 First, we note that the Plan administrator, who is charged with interpreting the Plan, considered the plaintiffs' claims for additional benefits and denied them. Judicial review of a plan administrator's decision to deny benefits is limited to a determination of whether the denial of benefits was arbitrary and capricious. Cook v. Pension Plan for Salaried Employees of Cyclops Corp., 801 F.2d 865, 869-70 (6th Cir.1986). The court must accept the administrator's rational interpretation of the Plan in the face of an equally rational interpretation offered by participants. Id. at 870 (citing Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 601 (2d Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983)).
 
 
 27
 Section 4.05 of the Plan, which provides for the special shutdown benefit, applies only to a participant "whose active service with an Employer ceases by reason of a layoff or a permanent shutdown of the plant ... and who, at the date of such cessation of service, or thereafter by reason of the provisions of Section 2.233(d)," satisfies the age and service requirements for the benefit. (Emphasis added). Section 2.233(d) of the Plan extends a participant's "Vesting Service" by "any period of layoff of up to [three years in the case of the Massillon facility] (or up to the expiration of his recall rights, if sooner)...." (Emphasis added). Section 2.233(d) by its terms applies only to participants who have been laid off. Plaintiffs do not claim that they were ever laid off. Instead, they contend in their motion for partial summary judgment filed below that "[t]he application of this language in the plant shutdown context is not specifically addressed in the Plan," and that the award of the plant shutdown benefits which they seek under "Plan Section 4.05 is completely consistent with this treatment" of laid off employees. Such an interpretation, however, is not consistent with a plain reading of the Plan language. In order to qualify for the section 4.05 plant shutdown benefit, these plaintiffs had to meet the specified age and service requirements at the date upon which the plant was permanently closed. Because they did not meet these requirements, they are not entitled to receive the plant shutdown benefits. We therefore find that the Plan administrator properly concluded that the five plaintiffs were not entitled to section 4.05 benefits.
 
 
 28
 AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Of the 150 persons who were employed at the Massillon facility at the time of the shutdown, 30 were eligible for and are receiving the plant shutdown benefits described above, 36 were not vested and not entitled to any benefits, and 84 (including the plaintiffs) are entitled to a deferred vested benefit
 
 
 [2]
 Plaintiffs argued below that the permanent plant shutdown of the Massillon facility and accompanying discharge of the plant's 150 employees constituted a "partial termination" of the SKF Plan (which Plan had 2,382 active participants nationwide after the Massillon plant shutdown), and that such a partial termination was the equivalent of a Plan amendment under section 204(g). In the course of evaluating this argument and ultimately concluding that the shutdown of the Massillon facility was not the equivalent of a Plan amendment under the proferred analysis, the district court looked to the body of law which has developed regarding the application of section 411(d)(3) of the Internal Revenue Code (IRC), 26 U.S.C. Sec. 411(d)(3), a statute which sets forth one of the requirements which an ERISA plan must meet in order to qualify for favorable tax treatment, i.e., that upon complete or partial termination of the plan, "benefits accrued to the date of such ... termination ... are nonforfeitable." Because we conclude that the Plan section 4.05 plant shutdown benefit does not fall within the group of benefits protected by ERISA section 204(g), we find it unnecessary to address the propriety of the district court's application of IRC section 411(d)(3), and the relevant body of law developed thereunder, to the question of whether a permanent plant closure is the equivalent of a plan amendment under ERISA section 204(g)
 
 
 [3]
 The section 204(g) prohibition against decrease, by amendment, of early retirement benefits, retirement-type subsidies, and optional benefits is directed by its terms to the elimination or reduction of those benefits attributable to service before the amendment. Section 204(g) goes on to state that in the case of a retirement-type subsidy, the section shall apply only with respect to a participant "who satisfies (either before or after the amendment) the preamendment conditions for the subsidy." 29 U.S.C. Sec. 1054(g)
 
 
 [4]
 ERISA section 3(24) defines "normal retirement age" as follows:
 The term "normal retirement age" means the earlier of--
 (A) the time a plan participant attains normal retirement age under the plan, or
 (B) the later of--
 (i) the time a plan participant attains age 65, or
 (ii) the 10th anniversary of the time a plan participant commenced participation in the plan.
 29 U.S.C. Sec. 1002(24).
 
 
 [5]
 Section 204(g)(2)(A) refers to the elimination or reduction of an early retirement benefit or a retirement-type subsidy, while section 204(g)(2)(B) refers only to the elimination of an optional form of benefit. 29 U.S.C. Sec. 1054(g)