848 F.2d 188
 9 Employee Benefits Ca 2413
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joseph C. ARTLEY, et al, Plaintiffs-Appellants,
v.
McLOUTH STEEL CORPORATION GENERAL RETIREMENT PLAN FOR
SALARIED EMPLOYEES, Ernest Brocher, William Panny, Robert P.
Perkins, Pension Benefit Guaranty Corporation, as Trustee of
McLouth Steel Corporation General Retirement Plan for
Salaried Employees, Defendants-Appellees.
 No. 86-2107.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1988.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs, former employees of McLouth Steel Corporation ("McLouth"), appeal the entry of summary judgment for defendants by the district court in this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. sections 1001-1461 (ERISA). Plaintiffs argue that the decision of the McLouth Retirement Plan Committee ("Retirement Committee") to deny pension benefits was arbitrary and capricious and that the plaintiffs were denied a full and fair review by the Retirement Committee. We agree with the district court that the Retirement Committee's denial was not arbitrary and capricious and that the plaintiffs were given a full and fair review. Accordingly, we AFFIRM the order of the district court granting summary judgment for defendants.
 
 I. Background
 
 2
 Plaintiffs are former non-union, salaried employees of McLouth, who worked at McLouth's steelmaking facilities in Trenton and Gibraltar, Michigan. Defendants are the McLouth Steel Corporation General Retirement Plan for Salaried Employees ("the Plan"), the Retirement Committee, and the Pension Benefit Guaranty Corporation. Plaintiffs contend that they are entitled to pension benefits under the "Rule of 65" in section 4.05A of the Plan. This section provides:
 
 
 3
 4.05A Rule of 65 Retirement. Effective January 1, 1978, any Participant (i) who has twenty (20) or more years of Credited Services, (ii) whose age plus Credited Service equals 65 or more, (iii) who is off work on account of a plant shutdown, extended layoff, or disability as determined by a physician appointed by the Company, and (iv) who is not furnished suitable alternate work by the Company, shall be eligible to retire and shall be entitled to a Rule of 65 Retirement Benefit as provided in Article V.
 
 
 4
 (Emphasis added). This provision was added to the Plan and became effective January 1, 1978. It follows section 4.05, entitled "Special Early Retirement," commonly referred to as the 70/80 benefit. Under section 4.05, employees over the age of 55 with 70 years of combined age and credited service and employees with 80 years of combined age and credited service are eligible for early retirement if they "incur[] a Break in Service by reason of a permanent shutdown of a plant, department or subdivision thereof." (Emphasis added).
 
 
 5
 All of the plaintiffs met the Rule of 65 credited service and age-plus-credited-service requirements and none were furnished suitable alternate work by McLouth. It was stipulated that an extended lay-off is one of at least six-month duration. Therefore, the only requirement for eligibility for Rule of 65 benefits that is at issue is whether the plaintiffs were "off work on account of a plant shutdown." The Plan does not define the terms "plant shutdown" in section 4.05A, or "permanent shutdown" in section 4.05. The primary issue in this appeal is whether the Retirement Committee's interpretation of "plant shutdown" under the Rule of 65 as not including the sale of all of the assets of McLouth is reasonable. Plaintiffs argue that the discontinuation of operations by McLouth was a plant shutdown under the terms of the pension plan, and therefore the denial of their benefits was arbitrary and capricious.
 
 
 6
 On December 8, 1981, McLouth filed for reorganization under Chapter 11 of the Bankruptcy Code. An operating agreement between McLouth and its secured creditors was approved by the bankruptcy court on March 29, 1982. This agreement required that McLouth liquidate and surrender all of its assets to the secured creditors unless a purchaser was found. A detailed plan was developed in March and April, 1982, by McLouth to completely shutdown its steelmaking operations. "Shutdown" was used in the secured creditors' agreement and in the detailed plan to mean the cessation of production by McLouth in anticipation of liquidation.
 
 
 7
 In June, 1982, Tang Industries, Inc. ("Tang") began to investigate acquiring McLouth. Negotiations between Tang, McLouth, the secured creditors, and the Steelworkers Union (representing McLouth's unionized employees, but not representing plaintiffs) culminated in the sale of McLouth's operating assets to McLouth Steel Products ("Products"), a subsidiary of Tang. Tang made it clear during the negotiations that it would only acquire McLouth as a going-concern, and the written agreement between Tang and McLouth conditioned the sale upon there being no "material, adverse change in the customer base, the supplier relationships, the relationships with employees, or the composition or the operating readiness or condition of the Assets." The purchase agreement was approved by the bankruptcy court on October 29, 1982.
 
 
 8
 The purchase agreement required taking of inventory, which necessitated that the steelmaking operations be at the lowest level possible. The inventory was completed between November 10, 1982, and November 29, 1982, and employees were notified in advance that they would be laid off during this time. The terms of the sale did not include any guarantees of employment for salaried, non-union employees; however, plaintiffs were advised by letter dated November 19, 1982, that Products would become their employer. By letter dated November 24, 1982, plaintiffs were advised that their employment with McLouth had been terminated effective November 15, 1982, and no plaintiff was offered continued employment with McLouth after that date. By November 29, 1982, each plaintiff had returned to work at the same facility for Products at their same jobs and at the same rate of pay, although with substantially lower benefits than they enjoyed while employed by McLouth.
 
 
 9
 McLouth intended to terminate the Salaried Plan and Products did not intend to adopt and fund the Plan or otherwise become the "company" for purposes of the Salaried Plan. Plaintiffs applied for immediate pensions under the Rule of 65 Retirement provision in Section 4.05A of the Plan. They claimed they were entitled to benefits because they were off work on account of a plant shutdown within the meaning of section 4.05A. The Retirement Committee, composed of three executives of McLouth, directed its counsel to provide a legal opinion regarding the plaintiffs' eligibility. Counsel opined that plaintiffs were not eligible because there had been no shutdown. Counsel did not see any "compelling reason why plant shutdown should be construed to encompass the sale of substantially all of McLouth's assets." McLouth's special pension counsel had rendered a similar opinion earlier. McLouth advised each plaintiff in writing that his or her application for a Rule of 65 Retirement benefit had been denied.
 
 
 10
 Plaintiffs appealed the denial and the Retirement Committee held an appeals hearing on June 20, 1983. Appellants were represented by counsel, were given full opportunity to present their arguments, and submitted a brief in support of their position. At the hearing, the Retirement Committee indicated that it had considered the two prior instances in which provisions similar to section 4.05A could have been involved. The first was the Ironton Coke shutdown and liquidation in 1982. Production was not recommenced by the purchaser after the sale and the event was construed as a shutdown for purposes of a similar salaried plan. The one individual eligible for Rule of 65 benefits was awarded those benefits, although the Retirement Committee did not discuss the definition of shutdown in making this award. The second instance was the sale of the Stainless Steel Division to J & L in 1981. This involved the termination of employment for all employees by McLouth, sale of operating assets to J & L, and the simultaneous hiring of McLouth's former employees and continuation of production by J & L. No application for Rule of 65 benefits was filed, perhaps because J & L's pension plan counted past service with McLouth for vesting purposes, though not for benefits accrued. Thus, the Retirement Committee was not called on to determine if a plant shutdown had occurred, but this event was not perceived as a plant shutdown by either J & L or the Steelworkers Union.
 
 
 11
 After the hearing, the Retirement Committee asked counsel to reconsider the issue, and counsel again concluded that plaintiffs were not entitled to immediate retirement under the Rule of 65. The Retirement Committee met by telephone conference to consider the appeals, reviewed counsel's memorandum, and decided to reaffirm its prior denial of benefits to plaintiffs. By letter, the Retirement Committee advised plaintiffs of this decision.
 
 
 12
 Plaintiffs filed suit in federal district court, and the parties entered into a Stipulation of Facts and Stipulation as to Exhibits. The case was submitted on cross-motions for summary judgment. The district court granted defendants' motions for summary judgment, finding that the Retirement Committee's decision was rationally based and not arbitrary and capricious. The court determined that the Retirement Committee had reviewed prior applications of the Rule of 65 to insure that its decision was fair and consistent. The court found no evidence that the decision was inconsistent or made in bad faith. Moreover, the court found that the Retirement Committee considered the language in Section 4.05 regarding the 70/80 benefit and carefully considered the entire Salaried Plan before making its decision.
 
 
 13
 The district court found that there was no indication in the Salaried Plan itself as to what constituted a plant shutdown. Therefore, although the court acknowledged that plaintiffs' interpretation may be rational, it found that a rational basis existed for the Retirement Committee's decision. The record established that the Retirement Committee hired legal experts, reviewed prior decisions, and reviewed the language in Section 4.05, resulting in a full and fair review. Plaintiffs appealed.
 
 II. Discussion
 
 14
 A decision granting summary judgment should be affirmed only if
 
 
 15
 the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. In this context, all inferences from the facts must be viewed in a light most favorable to the non-moving party. However, the movant need not present evidence to negate every aspect of the non-movant's claim, they [sic] need only support their own claim that there is no genuine issue of material fact.
 
 
 16
 Adcock v. Firestone Tire and Rubber Co., 822 F.2d 623, 626 (6th Cir.1987) (citations omitted).
 
 
 17
 Another panel of this court has recently reaffirmed that the arbitrary and capricious standard is applicable to the denial of benefits by plan administrators. Varhola v. Doe, 820 F.2d 809, 812-13 (6th Cir.1987) (Kennedy, J.). "This Court's duty is not to evaluate the merits of the parties' opposing interpretations of the Salaried Plan's provisions. Rather, we must determine whether the plan administrator acted arbitrarily and capriciously in denying plaintiffs shutdown pensions." Id. at 815. Accord Adcock v. Firestone Tire and Rubber, 822 F.2d 623 (6th Cir.1987); Cook v. Pension Plan for Salaried Employees of Cyclops Corp., 801 F.2d 865, 869-71 (6th Cir.1986) (if plan administrator's interpretation of ambiguous provision is rational, courts should defer to that interpretation "in the interest of efficient pension administration"). The Varhola court held that this standard applied despite the plaintiffs' argument (similar to that in the present case) that a stricter standard of review was necessary because ERISA imposes a fiduciary duty on plan administrators, the action is essentially a contract case, and the plan administrators were company executives with a conflict of interest. Id.[1]
 
 
 18
 In determining if the plan administrator's interpretation of an ambiguity in the plan is rational, important factors are past interpretation and past application of the plan and consistency of the interpretation with a fair reading of the plan, including the goals of the plan. Adcock, 822 F.2d at 626-27; Cook, 801 F.2d at 870; Rhoton v. Central States, Southeast and Southwest Areas Pension Fund, 717 F.2d 988 (6th Cir.1983).
 
 
 19
 The court in Varhola also was considering a Rule of 65 provision and interpretation of shutdown. The company, Cyclops, had sold its coke ovens to McLouth and the salaried employees, as in the present case, suffered a break in continuous service before returning to work for McLouth. The issue was whether the break resulted from a "permanent shutdown" of the coke plant; if so, the plaintiffs were entitled to Rule of 65 benefits. The district court held that the decision of the pension board to deny benefits was arbitrary and capricious. The court of appeals remanded this issue because the record was virtually silent as to the reasons of the pension board for its decision. 820 F.2d at 815. The appellate court found no evidence of a formal decision by the board and no evidence of the interpretation used, resulting in no basis for the district court's holding that the board determination was arbitrary and capricious. Id. The appellate court noted that there was no indication that the board adopted the interpretation of the plan provided by counsel; in fact, it appeared that the board received counsel's opinion after its original decision to deny benefits. Moreover, the court was troubled by the possibility that the plaintiffs may have been treated differently from other similarly situated employees, but was unable to determine this from the record. Id. at 816.
 
 
 20
 The record in Varhola can be easily distinguished from the record in the present case. The record shows that the Retirement Committee made a formal decision based on several factors. The Retirement Committee here considered advice from general and pension counsel, history of prior applications of the Rule of 65, and the language of both sections 4.05A and 4.05 (70/80 benefits). Furthermore, there are no allegations that other similarly situated employees received shutdown benefits.
 
 
 21
 Plaintiffs assert that the sale of the facilities to Products was a plant shutdown because the business was no longer operated by, and the plaintiffs were no longer employed by, McLouth. Defendants counter that the Rule of 65, like the 70/80, requires a permanent shutdown, i.e., complete cessation of operations. They note that the evidence demonstrates that plant operations continued, though at a low level, during the two-week transition period in November 1982 immediately before and after the sale. Moreover, this slowdown was planned and patently temporary. Therefore, defendants contend, there was no shutdown. We need not decide which argument is correct, for our review is limited to affirming the determination of the Retirement Committee if it is reasonable.
 
 
 22
 Plaintiffs also argue that documents prepared by the company defined plant shutdown as including a sale. But these documents were prepared pursuant to the operating agreement between McLouth and its secured creditors and had nothing to do with the pension plan. Moreover, some of the shutdown schedule was an alternative to a sale and prepared before Tang became interested in acquiring McLouth. Therefore, the company's use of the term shutdown in these documents should not be determinative of the term's meaning in the Salaried Plan.
 
 
 23
 The Retirement Committee explained to plaintiffs at the appeals hearing that it had considered prior instances, including the Ironton Coke shutdown and the Stainless Steel Division sale. Plaintiffs argue that the Ironton situation is analogous, but that it supports their interpretation of the Salaried Plan. The trustee appointed by the bankruptcy court terminated operations at Ironton, laid off all the employees, and sold the assets. The Purchaser subsequently scrapped the facility. In the present case, McLouth terminated operations, laid off all employees, and sold the assets. The only difference, plaintiffs argue, is the purchaser's decision to operate the business, which should be immaterial. Therefore, plaintiffs contend that they are entitled to benefits also. The sale to Tang, however, was conditioned on the continuation of operations of the facilities. Moreover, plaintiffs knew of their employment with Products before they were terminated by McLouth. The Retirement Committee's determination that these distinctions were important is rational.
 
 
 24
 Plaintiffs also argue that the Retirement Committee did not consider the semantic difference between plant shutdown in section 4.05A and permanent shutdown in section 4.05. But the district court determined, supported by the record, that the language of 4.05 was called to the attention of the Retirement Committee.
 
 
 25
 In conclusion, the district court correctly determined that the Retirement Committee's interpretation was not without a rational basis in the Salaried Plan itself or an implausible interpretation contrary to the written language of the Plan. See Rhoton, 717 F.2d at 989, 992. Moreover, the record documents and supports the Retirement Committee's decisionmaking process. See Varhola, 820 F.2d at 815.
 
 
 26
 The plaintiffs admitted that the following were provided them by the Retirement Committee: written denial within 90 days; notice of specific reasons for denial and referenced Plan sections; notice of review procedure; opportunity to submit issues and comments and to review documents; representation by counsel at hearing; and a written decision within 60 days of hearing. In addition, the Retirement Committee considered untimely appeals, obtained expert advice, allowed plaintiffs to submit a brief, and obtained another legal opinion to consider the issues in the brief. Therefore, it cannot be said that plaintiffs were denied a full and fair hearing.
 
 
 27
 Accordingly, we AFFIRM the district court's grant of summary judgment for defendants on the grounds that the Retirement Committee's denial of benefits was not arbitrary and capricious and the plaintiffs were given a full and fair hearing.
 
 
 
 [1]
 Moreover, the plaintiffs conceded before the district court that the standard to be applied was that of arbitrary and capricious, and did not raise the argument of a different standard before that court
 The Third Circuit has recently modified the arbitrary and capricious standard. See Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134 (3d Cir.1987) (denial of benefits by "interested" employer/administrator of unfunded pension plan subject to review under principles governing construction of contracts), cert. granted, Firestone Tire & Rubber Co. v. Bruch, 56 U.S.L.W. 3682 (U.S. Apr. 4, 1988). For a discussion of the development and application of the arbitrary and capricious standard, see Van Boxell v. Journal Co. Employees' Pension Plan, 836 F.2d 1048 (7th Cir.1987) (declining to follow Bruch; application of sliding scale for arbitrary and capricious standard).