**Jerrold MOOS, Plaintiff–Appellant,**

v.

**The SQUARE D COMPANY, Defendant–Appellee.**

No. 94–4033.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1995.

Decided Dec. 22, 1995.

Kenneth G. Hawley (argued and briefed), Cincinnati, OH, for Plaintiff–Appellant.

Mark J. Stepaniak, Taft, Stettinius & Hollister, Cincinnati, OH, Julie Y. Chen, and Nancy G. Ross (argued and briefed), McDermott, Will & Emery, Chicago, IL, for Defendant–Appellee.

Before: ENGEL, MILBURN, and NORRIS, Circuit Judges.

ENGEL, Circuit Judge.

Jerrold Moos appeals the district court's grant of summary judgment for the Square D Company ("the Company") in Moos's suit against the Company for payment of benefits under an ERISA[1] plan. Because we agree with the district court that the decision of the plan's administrator to deny benefits to Moos was not arbitrary and capricious, we affirm.

I.

Moos started working for the Square D Company as an accountant in 1971. In applying for the job, he wrote that he had graduated from college, but in fact he had not. When the Company asked for a transcript, he provided an altered one that not only showed him as having graduated but also inflated his grades in seven accounting classes. He also submitted a resume falsely stating that he had graduated as an accounting major.

Moos started work as a Senior Auditor for the Company. Eventually he received various promotions to different supervisory accounting positions. A college degree was a prerequisite for at least one of the positions that Moos held, that of Plant Controller.

In 1991, the Company adopted a "Change of Control Separation Plan for Salaried Employees" ("the Plan"), which was governed by ERISA. Under the Plan, an eligible employee would receive benefits if he lost his job within two years of a change in management, unless one of five exceptions applied. One of the exceptions was termination "for good cause." Article IV, section 4.2(b)(iii)(B) of the Plan provided that "[a] termination for good cause shall have occurred where a Participant is terminated because of ... the willful engaging by the Employee in illegal conduct or gross misconduct which is materially and demonstrably injurious to the Company." (J.A. at 109.) The Summary Plan Description designated the Company as Administrator of the Plan and gave the Administrator discretion in applying the Plan:

> The Company as Plan Administrator shall have the sole authority in the exercise of its discretion to interpret, apply and administer the terms of the [Plan] and to determine eligibility for benefits and the amount of any benefits under the [Plan], and its determination of any such matters shall be final and binding.

(*Id.* at 52.)

Later in 1991, control of the Company did change hands, triggering the application of the Plan. In 1992, the new management

---

1. Employee Retirement Income Security Act, 29 U.S.C. § 1001–1461.

asked all employees to review their files for accuracy. Each employee was given a copy of his "Management Profile," which described the employee's employment history and educational credentials. Moos did not correct the misinformation he had supplied twenty-one years earlier. Soon after, Moos applied for a new position at the Company, again claiming to have a college degree, which was required for the position. Later, the Company asked all employees with college degrees for copies of their transcripts, and Moos provided a copy of the same altered transcript he had previously submitted. When the Company discovered Moos's misrepresentations, Moos was fired.

Because his termination was within two years of the change of control, Moos applied for benefits under the Plan. The Administrator denied Moos's request, citing Article IV, section 4.2(b)(iii)(B) of the Plan. A letter to Moos's counsel on behalf of the Administrator reasoned as follows:

> The fact that Mr. Moos falsified his employment records upon hire is not the only relevant fact we considered. Mr. Moos continued to assert his misrepresentation by the fact that he has had many opportunities to correct the information and failed to do so. As recently as March 9, 1992, he used this false information to enhance his position/advancement in requesting consideration for a supervisory position.

> Mr. Moos has held supervisory positions where he would have been responsible for enforcing the Company's work rules vis-a-vis subordinates. One of the Company's rules states that it is grounds for immediate termination if an employee falsifies a Company record. When a person of Mr. Moos' standing in the Company engages in any form of dishonesty, it is materially injurious to the Company.

(J.A. at 19.)

Moos appealed the Administrator's decision in district court. The court granted the Company's motion for summary judgment on Moos's claim of entitlement to benefits, noting that there was "ample evidence by which a reasonable Administrator could find the Plaintiff's behavior to be gross misconduct which is materially and demonstrably injuri-

ous to the company." *Moos v. Square D Co.,* No. C–1–92–727, 1994 WL 627563, at *4 (S.D.Ohio March 1, 1994).

## II.

■ In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that the denial of benefits under an ERISA plan must be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57. The highly deferential "arbitrary and capricious" standard is appropriate only when the plan clearly grants the administrator such discretionary authority. *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983–84 (6th Cir.1991); *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir. 1989). The Change of Control Separation Plan for Salaried Employees in this case expressly granted the Administrator full discretion both in interpreting the terms of the Plan and in determining eligibility for benefits under the Plan, so the arbitrary and capricious standard applies. As to the district court's decision, we review the grant of summary judgment de novo. *Leahy v. Trans Jones, Inc.,* 996 F.2d 136, 139 (6th Cir.1993).

■ Moos admits that the Company had cause to fire him, and he has not challenged the validity of his termination. His suit is for benefits, not for wrongful discharge. He argues that although he *was* fired "for good cause" in a broad sense, he *was not* fired "for good cause" as that phrase was defined in the Plan. Moos argues that the Administrator's decision was arbitrary and capricious because no evidence shows that Moos's misconduct was "materially and demonstrably injurious to the Company." Because of this lack of evidence, he argues, he did not fall under the exception for employees terminated "for good cause" as articulated in Article IV, section 4.2(b)(iii)(B) of the Plan.

Moos is correct in characterizing this case as one that is governed by a private contract rather than by case law on wrongful dis-

charge. To the extent that the Plan clearly defined termination "for good cause," such case law is indeed irrelevant. Moos's acknowledgment that the Company had good cause to terminate him is nonetheless telling. He has prudently chosen not to argue that twenty-one years of misrepresentation was an invalid reason for his discharge; such an argument would have no merit. Similarly, Moos's suggestion that this Court should find the Administrator's decision that Moos was terminated for good cause to be arbitrary and capricious is without merit. The Plan necessarily defined "good cause" in broad terms subject to interpretation. Just as it was reasonable for the Company to fire Moos because of the years of deception, it was well within the range of the Administrator's discretion to decide that Moos's continuing misrepresentations were materially and demonstrably injurious to the Company.

The Company's admission that it has no empirical data showing that it has been injured does not convince this Court that the Administrator's decision was arbitrary and capricious. As expressed in the letter to Moos's counsel, the Administrator decided that when an employee in a supervisory position lies repeatedly, the lying is materially injurious to the Company. The only part of the Plan that gives us any pause is the provision that the misconduct must have been "demonstrably injurious." This somewhat ambiguous phrase could mean, as Moos urges, that tangible evidence of the injury is required, but it also is susceptible to more expansive interpretations. Moos cites a dictionary definition of "demonstrable" to support his position: "(1) Capable of being demonstrated or proved; (2) Clearly evident or obvious." (Reply Br. at 6.) Even under Moos's definition, the Administrator's decision was valid, because it is apparent that the injury to the Company caused by Moos's misrepresentations was "[c]learly evident or obvious" to the Administrator.

▮ Furthermore, we grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms. *Cook v. Pension Plan for Salaried Employees of Cyclops Corp.*, 801 F.2d 865 (6th Cir.1986),[2] stressed the extent to which an administrator's construction of an ambiguous term in a plan must be respected. In *Cook*, employees applied for benefits under a pension plan but were ruled ineligible by the plan's administrators. The administrative decision hinged on an interpretation of the word "discharge." The district court ruled that the administrators had ignored the plain meaning of this word and found the decision to be arbitrary and capricious. *Id.* at 866. This Court reversed, noting that the language of the plan was not altogether clear and that "under such circumstances, the deference to be accorded the [Pension] Board in the administration of its plan requires the court to stay its hand in the interest of efficient pension administration." *Id.* at 871. Although *Cook* involved a pension plan, we see no reason not to apply the same rule here. The Administrator had ample discretion to decide that despite the lack of tangible evidence of injury, Moos's misconduct was not only "materially" injurious but also "demonstrably" injurious to the Company.

If Moos's only transgression were that which occurred years earlier, we might be more sympathetic to his claim that his misconduct was not materially and demonstrably injurious to the Company. However, the trail left by his more recent misconduct is much fresher. It was certainly not arbitrary and capricious for the Administrator to conclude that Moos's ongoing and egregious deception was materially and demonstrably injurious to the Company, if indeed Moos did not admit as much in conceding that he was discharged for good cause. The Administrator's specific reference to Moos's obligation to enforce the Company's honesty rules as to those under his supervision is fully adequate to meet the "materially and demonstrably injurious" standard of the Plan.

We note further that, as the district court recognized, the Administrator's construction

---

**2.** *Cook,* which reviewed an administrative decision under the "arbitrary and capricious" standard, was decided before the holding in *Firestone* that this standard applies only when a plan administrator had discretion in determining eligibility. In Moos's case, though, the administrator did have such discretion, so the principle of *Cook* applies.

of the Plan in denying benefits to Moos because of his misrepresentations as to his educational background was consistent with this Court's policy of denouncing resume fraud. The cases in which we have condemned such deception have involved the "after-acquired evidence" doctrine. This doctrine addresses situations in which after a plaintiff brings an action for wrongful discharge, the defendant finds evidence of wrongdoing by the plaintiff, such as resume fraud, such that the defendant would have either fired or failed to hire the plaintiff had it found the evidence earlier. The doctrine holds that summary judgment for the defendant is appropriate in this scenario.[3] *E.g., Milligan–Jensen v. Michigan Technological Univ.*, 975 F.2d 302, 304 (6th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2991, 125 L.Ed.2d 686, *cert. dismissed,* —— U.S. ——, 114 S.Ct. 22, 125 L.Ed.2d 773 (1993); *Johnson v. Honeywell Info. Sys.*, 955 F.2d 409, 415 (6th Cir.1992). These cases are not controlling here, because Moos's case does not involve after-acquired evidence; the language of the Plan controls this case. As stated earlier, however, the language of the Plan was necessarily general and was subject to the interpretation of the Administrator with respect to each individual case. Given the consistency of the Administrator's interpretation in this case with the policy of condemning resume fraud that we have expressed in the after-acquired evidence cases, we are hardly inclined to characterize the Administrator's decision as arbitrary and capricious.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

**3.** In *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court limited the application of the after-acquired evidence doctrine. It held that a wrongfully discharged plaintiff cannot obtain the remedies of reinstatement or "front pay" in an after-acquired evidence case but can recover back pay based on the time period from the unlawful discharge until the discovery of the material evidence of wrongdoing. *Id.* at ——, 115 S.Ct. at 886. This holding in no way undermines the validity of this Circuit's policy of condemning resume fraud.