File Name: 06a0369n.06
Filed: May 25, 2006

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| GEORGE M. SMILJANICH, | ) |
| | ) |
|   Plaintiff-Appellee/Cross-Appellant, | ) |
| | ) ON APPEAL FROM THE |
|     v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| GENERAL MOTORS CORPORATION, | ) DISTRICT OF MICHIGAN |
| | ) |
|   Defendant-Appellant/Cross-Appellee. | ) |

Before: **MARTIN**, **NELSON**, and **COLE**, Circuit Judges.

**DAVID A. NELSON**, Circuit Judge. In this action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, the plaintiff seeks to establish his eligibility for employer-subsidized health care and life insurance in retirement. The benefits at issue are not available to retirees credited with service beginning after January 1, 1993. The plaintiff was hired in 1977, but his employment was interrupted for 23 months as a result of the 1998 sale of the business unit in which he worked. The acquiring company failed, and the plaintiff was rehired by the defendant in 2000.

The defendant, as administrator of the relevant benefit plans, took the position that the plaintiff's eligibility for subsidized benefits depended on his service date as determined by company policy. Having concluded, under company policy, that the plaintiff's service ran

from the date of his re-employment rather than being bridged back to the date of his earlier hire, the defendant was ruled ineligible for the benefits he had hoped to receive on retirement.

The district court entered judgment for the plaintiff on the ground that the defendant's ruling on eligibility was arbitrary and capricious. The court declined, however, to award the plaintiff attorney fees. Both parties now appeal.

We conclude that neither the defendant's interpretation of its benefit plans nor its application of company policy was arbitrary and capricious. There is an inconsistency in the documents describing the defendant's "bridging" policy as it applied to the plaintiff, but the defendant's resolution of that inconsistency was reasonable and thus entitled to deference. It follows that the plaintiff has no claim to attorney fees at this time.

It may well be that the ambiguity in the relevant documents, together with evidence that the plaintiff relied on assurances that his service date would be "bridged," justify relief on a theory of equitable estoppel. The district court having reserved that issue, however, we shall not decide it here.

The judgment on the plaintiff's claim of arbitrary and capricious conduct will be reversed, the district court's refusal to award attorney fees at this time will be affirmed, and the case will be remanded for consideration of the plaintiff's estoppel claim. We shall deny a motion by the defendant to strike the plaintiff's brief.

I

The plaintiff, George Smiljanich, began working for the defendant, General Motors Corporation, on March 31, 1977.[1] From the mid-1980s until August 31, 1998, Mr. Smiljanich was a senior manufacturing engineer for GM's Delphi Chassis Systems Coil Spring Operation.

GM sold its Delphi Chassis unit effective August 31, 1998. Mr. Smiljanich was offered employment with the acquiring company, Chasco Systems, Inc., and he accepted. Mr. Smiljanich did not have the option of remaining with GM; the company prohibited him from transferring to any other GM job. Smiljanich's separation from GM was classified by the company as "special separation" due to "sale of activity."

In September of 1998, GM furnished Mr. Smiljanich and other former salaried employees of Delphi Chassis a document entitled "Your Benefits and Status as a General Motors Employee Following the Sale of [Delphi Chassis]." Page 5 of this booklet contained a chart summarizing the retirement provisions applicable to employees who separated from GM upon the divestiture of Delphi Chassis. A "note" appearing below the chart read as follows:

> "You will not be eligible for contributions for health care and Basic Life Insurance coverages in retirement unless you are . . . terminated, other than for cause, by the successor company within three years of the date of transfer,

---

[1]Mr. Smiljanich had worked for GM from May of 1972 until September of 1974, but that period of employment is not relevant to this appeal.

return to GM, and retire from GM with eligibility for such coverages and contributions in retirement on the date of such retirement."

Notwithstanding the note, an exhibit on page 14 of the "Your Benefits" booklet contained the following statement:

"If you are re-employed by General Motors within 12 months following separation from General Motors, your General Motors length of service will be determined on the basis of the circumstances of your individual case."

This statement is consistent with the generally applicable "bridging" policy described in a number of GM manuals. A 1992 booklet entitled "General Motors Policy and Procedure Covering Salaried Personnel," for example, explained that a "special separation" breaks an employee's length of service, but that "if the employee is rehired within 12 months, length of service will be determined by the conditions and circumstances of the individual case."

In May of 2000, Chasco announced that it was closing the plant at which Mr. Smiljanich worked. GM offered Smiljanich a job with its Powertrain Group, and he accepted on June 3, 2000. Smiljanich returned to work at GM effective July 17, 2000.

On June 5, 2000, Mr. Smiljanich wrote to the GM staffing specialist who had extended the offer of employment to him and asked, among other things, whether he would have "full health care benefits upon retirement." A note handwritten on Smiljanich's memorandum says, "As a hire after 1-1-93, you will pay full monthly cost of health in retirement." GM has not shown, however, that this response was ever communicated to Smiljanich.

There is circumstantial evidence that it was not: about a year later, on June 19, 2001, Mr. Smiljanich again asked GM whether his "Chasco time [is] bridged onto [his] GM time for full medical benefits at retirement." GM did not respond to this renewed inquiry until early 2002. In January of that year Smiljanich was told that his "length of service is 3/31/77," which is what GM's personnel records reflected at that time. But the following month GM determined that "there is no requirement to bridge [Smiljanich's] length of service regarding his rehire to General Motors on July 17, 2000." As GM explained in an internal communication,

> "[Delphi Chassis] was divested and became Chasco Corp. on 09/01/98. Mr. Smiljanich did not return to GM within 12 months of the September 1998 date, which would have allowed him consideration for an adjusted length of service date. Smiljanich returned to GM approximately 21 months (07/17/00) after the September 1998 date. Therefore, Mr. Smiljanich's new service date should reflect his current date of re-hire/re-employment which is July 17, 2000."

GM changed its personnel records accordingly.

In April of 2002, while acknowledging that "normal GM policy" allowed bridging only when an employee was rehired within 12 months of separation, the personnel director at the Powertrain plant where Mr. Smiljanich worked asked the company to adjust Smiljanich's "service date [to] 3-31-77 rather than 7-17-00." GM's Salaried Policy Development & Employee Relations Center of Expertise ("Policy Committee") denied the request.

The Policy Committee pointed out that "[t]here are no special provisions for former Chasco employees who return to GM after September 1, 1999 to bridge their length of

service." (GM had on at least one occasion extended the 12-month window for consideration of bridging to 36-month window in connection with the sale of a business unit.) The Committee also said that the note on page 5 of the "Your Benefits" booklet did not require bridging because Mr. Smiljanich "did not meet the eligibility for coverage under the GM Salaried health care and Basic Life Insurance programs as [they] pertain[] to post-retirement."

The Powertrain personnel director, joined by Mr. Smiljanich's plant manager, requested reconsideration of the Policy Committee's decision. They explained that Smiljanich's service date "was bridged" at the time of his rehiring, that Smiljanich was so informed, and that he had been treated since then as if his service date were March 31, 1977. They described Mr. Smiljanich as "exceptionally skilled, technically experienced, and loyal," and they asserted that "the lack of a negotiated clause dealing with a length of service bridge period extension . . . does not prevent GM from doing what is right . . . ." The Policy Committee adhered, however, to its adverse decision.

Mr. Smiljanich appealed that decision to GM's Employee Benefit Plans Committee ("Benefits Committee"). Smiljanich said he had been told by the GM staffing specialist, before he was re-hired, that his length of service would be bridged. He stated further that he turned down another job offer because he believed he would be a "bridged employee" at GM. "Why would I have returned to GM," Smiljanich asked, "if I would not have health care and related benefits at retirement?"

The Benefits Committee took it as a given that Mr. Smiljanich's service date — a matter of GM policy rather than plan interpretation — was July 17, 2000. Accordingly, it viewed the question before it as whether Mr. Smiljanich's eligibility for benefits should be determined on a basis other than his length of service. The Committee concluded that Smiljanich's "benefits are properly determined based on a length of service date of July 17, 2000, unless and until such length of service date is changed by the Corporation." Mr. Smiljanich sought further consideration by the Policy Committee, but GM treated the matter as closed.

Having exhausted his administrative remedies, Mr. Smiljanich sued GM in federal district court. The complaint, filed under 29 U.S.C. § 1132(a)(1)(B), stated claims for arbitrary and capricious conduct, breach of contract, misrepresentation, and estoppel. Mr. Smiljanich sought reinstatement of eligibility for benefits that depended on his length of service, reimbursement for replacement life insurance that he had purchased, and attorney fees.

The parties filed motions for judgment on the administrative record. The district court, after hearing oral argument, held that GM's denial of benefits was arbitrary and capricious. The court "reserved a ruling" on the estoppel claim, stating "[i]f I am wrong [the case] will come back and I will decide the estoppel." The court denied Mr. Smiljanich's request for reimbursement of life insurance costs as well as his request for attorney fees. On

the attorney fee issue, the court held that GM did not act in bad faith:  "[T]here was just a good faith arbitrary and capricious decision."

GM filed a timely appeal, and Mr. Smiljanich cross-appealed from the denial of attorney fees.

II

In the district court, GM moved to strike an affidavit (and two exhibits attached thereto) that Mr. Smiljanich submitted with his motion for judgment.  The basis for the motion to strike was the parties' agreement, at an earlier status conference, that the case would be heard on the administrative record unless and until the district court held Smiljanich's estoppel claim to be legally viable.  The court found the motion to be moot after "the parties agreed [at another conference] that the Court would proceed with the hearing on the pending motions without considering the exhibits and affidavit."

Mr. Smiljanich's principal appellate brief contains references to the affidavit and exhibits that were not considered by the district court.  GM has moved for an order striking the brief and requiring Smiljanich to file a new brief without references to the materials in question.

GM's motion to strike will be denied on the ground that the relief it seeks is unnecessary.  As explained below, we have decided to pretermit Mr. Smiljanich's estoppel

claim — the only claim to which the affidavit and exhibits could be relevant. Nothing is to be gained, therefore, from an order striking Mr. Smiljanich's brief.

III

A benefits determination challenged under § 1132(a)(1)(B) is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If a plan affords such discretion to an administrator or fiduciary, . . . the denial of benefits [is reviewed] only to determine if it was 'arbitrary and capricious' . . . ." *Marks*, 342 F.3d at 456. It is undisputed that the health care and life insurance plans at issue here give GM the discretionary authority that calls for deferential review.

GM's denial of eligibility benefits is not arbitrary and capricious if it is rational in light of the plans' provisions. See *id.* at 456-57. We cannot say that the Benefits Committee acted irrationally in interpreting the plans. The health care plan provides that GM will not fund coverage for "an employee whose continuous service with the Corporation commences on or after January 1, 1993 and who retires after that date." The plan defines "service" as "that period of employment with the Corporation or any of its wholly-owned subsidiaries which is considered unbroken by the Corporation as determined by its salaried personnel policies and procedures." Similarly, the life insurance plan provides that basic coverage

ceases "[i]f an employee . . . who was hired on or after January 1, 1993, retires." Like the health care plan, the life insurance plan does not establish bridging rules: "[l]ength of Service means the Employee's unbroken service as defined by rules established by the Corporation . . . ." On its face, the conclusion of the Benefits Committee that Mr. Smiljanich is ineligible for the benefits in question so long as GM considers his service to have begun on July 17, 2000, is not unreasonable.

But was it reasonable for GM to determine that Mr. Smiljanich's service began on July 17, 2000? The denial of any consideration of future eligibility for benefits turned on that determination, and we do not understand GM to be arguing that the determination can be insulated from review on arbitrary and capricious grounds because it was made as a matter of company policy rather than as a matter of plan administration. If the Policy Committee's refusal to adjust Mr. Smiljanich's service date was arbitrary and capricious, then, we believe that the Benefits Committee's reliance on that service date was likewise arbitrary and capricious.

GM argues, with considerable support in the record, that its normal policy with respect to "specially separated" employees is to consider bridging only if an employee returns to GM within 12 months. That policy is clearly expressed at page 14 of the "Your Benefits" booklet that Mr. Smiljanich received upon GM's divestiture of Delphi Chassis.

Mr. Smiljanich relies heavily on page 5 of the booklet, which says that an employee will be eligible for employer-paid health care and life insurance in retirement if (1) he is

"terminated, other than for cause, by [Chasco] within three years of the date of transfer," (2)

he "return[s] to GM," and (3) he "retire[s] from GM with eligibility for such coverages and

contributions in retirement on the date of such retirement."

GM maintains that this provision has nothing to do with bridging. We think that most

readers would conclude otherwise. Under the health care and life insurance plans, no

employee who was separated from GM at the time of the Delphi Chassis divestiture could

be eligible for employer-paid benefits in retirement unless his length of service were bridged.

And under GM's standard length-of-service policy, bridging is possible only if an employee

returns to GM within 12 months. Why, then, does the provision refer to a return "within

three years"? That language has no clearly discernible purpose, it seems to us, unless it is

to extend from 12 months to 36 months the window of opportunity to be considered for

bridging. (We see nothing to support GM's suggestion that the language refers to a three-

year period of preferential hiring.)

The existence of a conflict between pages 5 and 14 of the "Your Benefits" booklet

does not, however, compel a conclusion that GM acted arbitrarily and capriciously in

refusing to consider bridging Mr. Smiljanich's service date. GM had the discretionary

authority to resolve the conflict, see *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995)

("we grant plan administrators who are vested with discretion in determining eligibility for

benefits great leeway in interpreting ambiguous terms"),[2] and we are not persuaded that it exercised its authority in an unreasonable manner.

As we have said, page 14 of the booklet is consistent with GM's long-standing, generally applicable bridging policy. That policy is obviously alterable — GM extended the bridging period to three years in connection with the sale of certain business units to a company called Peregrine Incorporated. But in the Peregrine situation, GM expressly concluded that "unique circumstances" made it appropriate to "extend[] the time permitted for 'bridging' length of service." Memorandum from G.A. Knechtel to General Motors Personnel Directors, at Attachment B (Sept. 11, 1998). And GM clearly set forth the modification of its policy: "former GM salaried employees who went to work for Peregrine and who return to GM employment within 36 months . . . will be eligible to have their prior GM length of service used to establish an adjusted length of service date." *Id.*

In the case at bar, GM did not purport to have found "unique circumstances" warranting an extension of the bridging period in connection with the Delphi Chassis

---

[2]A panel of this court has said that the common-law rule of *contra proferentum* limits a plan administrator's discretionary authority to resolve ambiguities where the ambiguous document was prepared by the administrator. See *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 846-47 (6th Cir. 2000). But in the case on which that panel relied, *Perez v. Aetna Life Insurance Co.*, 150 F.3d 550, 557 n.7 (6th Cir. 1998)(en banc), the question was whether the plan granted the administrator discretionary authority to make benefits determinations — not whether, in exercising such authority, the administrator properly resolved an ambiguity in the plan documents. See *Mitchell v. Dialysis Clinic, Inc.*, 18 Fed. Appx. 349, 353 (6th Cir. 2001). In our view, the rule stated in *Moos* — a decision that preceded *University Hospitals* — is correct in the light of *Firestone Tire & Rubber Co. v. Bruch.*

divestiture. There was no general announcement in connection with the sale to Chasco comparable to the announcement made in the Peregrine situation. And page 5 of the "Your Benefits" booklet does not explicitly modify the normal bridging policy — it does not even use the words "length of service" or "service date" and Mr. Smiljanich's reliance on page 5 rests on a negative pregnant. (You will *not* be eligible for contributions unless you return within three years, the implication being that you may get the benefits if you *do* return within three years and if GM has found you eligible as of the date of retirement.) In the absence of any evidence that page 5 was intended to supersede page 14, we think it was reasonable for GM to give effect to the statement of its generally applicable policy.

Mr. Smiljanich also relies on a modification of the normal bridging policy that was made in connection with GM's spin-off of Delphi Corporation in 1999. This modification provided that "[t]hrough December 31, 2001, employees transferred between [Delphi and GM], with mutual management agreement, will have continuous length of service for purposes of benefit plan eligibility . . . ." Contrary to Mr. Smiljanich's contention, the modification does not apply to him; he never transferred between Delphi and GM. (He moved from Delphi, which was then still a part of GM, to Chasco, and then from Chasco back to GM.) Accordingly, GM's failure to give Smiljanich the benefit of the modification was not arbitrary and capricious.

GM's refusal to bridge Mr. Smiljanich's service date is surprising, perhaps, given that this valuable, long-term employee never chose to leave GM and he returned to the company

as soon as he was able to. We can appreciate that GM's decision struck Mr. Smiljanich as a betrayal, especially when he had been classified as a bridged employee from the time of — and, he says, before — his re-employment. But absent a showing of equitable estoppel, we cannot say that it was not open to GM to correct Mr. Smiljanich's classification and apply its normal bridging policy.

IV

The reasonableness of GM's application of company policy does not bar Mr. Smiljanich from prevailing on his claim of equitable estoppel. The inconsistency between pages 5 and 14 of the "Your Benefits" booklet might have opened the door to such a claim, *cf. Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir.) (en banc) ("estoppel can only be invoked in the context of ambiguous plan provisions"), *cert denied*, 524 U.S. 923 (1998), and the claim might be meritorious if Mr. Smiljanich relied on pre-hiring representations that his service date would be bridged. See *id.* at 403. The district court did not reach these issues, however, and we shall not address them in the first instance. See *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 825 (6th Cir. 2005) ("Because the district court did not address either of these claims, we leave it to the district court in the first instance to consider them . . . .").

V

The final issue before us is the propriety of the district court's refusal to award attorney fees to Mr. Smiljanich. Given that the judgment in favor of Mr. Smiljanich will be reversed, there is no basis for an award of fees to Smiljanich at this time. Mr. Smiljanich's estoppel claim may prove successful on remand, and if it does we express no opinion as to whether an award of fees might be proper in connection with that claim.

## VI

GM's motion to strike is **DENIED**. The judgment on Mr. Smiljanich's claim that GM acted arbitrarily and capriciously is **REVERSED**, the district court's refusal to award attorney fees in connection with that claim is **AFFIRMED**, and the case is **REMANDED** for further proceedings not inconsistent with this opinion.