**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0017n.06

**FILED**

***Jan 09, 2012***

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Douglas J. Algie, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Northern Kentucky University, | ) | KENTUCKY |
| | ) | |
|     Defendant-Appellee. | ) | |
| | ) | |

Before:  SILER, McKEAGUE, and STRANCH, Circuit Judges.

**SILER**, Circuit Judge.  Plaintiff Douglas J. Algie appeals from the district court's grant of summary judgment to his former employer, Defendant Northern Kentucky University (NKU), on a Title VII retaliation claim.  Plaintiff also appeals an initial-screening decision to dismiss without prejudice a Family and Medical Leave Act (FMLA) retaliation claim construed as a Title VII medical disability claim and a decision by the district court not to sanction NKU for alleged noncompliance with an order of the court.

We **AFFIRM** the district court's judgment on the Title VII retaliation claim and decision not to sanction NKU.  However, we **VACATE** dismissal of the FMLA retaliation claim and **REMAND** for further proceedings.

**I.**

No. 10-5166
Algie v. Northern Kentucky University

In 1999, Algie began employment at NKU. In 2005, after additional staff had been hired for advanced positions, Algie filed a charge with the Equal Employment Opportunity Commission (EEOC). In 2006, he filed his first lawsuit against NKU.

Algie alleges that NKU began a series of retaliatory actions after he filed that first lawsuit. In June 2007, Algie filed a second EEOC complaint.

In July 2007, the district court dismissed the initial lawsuit and entered judgment for NKU. A little more than two months after that dismissal, in October 2007, NKU terminated Algie's employment. According to Algie, NKU provided no warning of the impending termination, failed to follow established disciplinary procedures, and refused to cite any reason for the termination.

In November 2007, Plaintiff filed a third EEOC complaint. In June 2008, Algie filed a second lawsuit, the instant action, alleging NKU's negative employment actions to be illegal retaliation under both Title VII of the Civil Rights Act of 1964 and the FMLA.

The district court conducted an initial screening, per *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999) (per curiam), and dismissed with prejudice Algie's "Title VII retaliation claims stemming from the filing of June 1, 2005[,] EEOC Charge and the filing of the First Algie Action." Additionally, the court read Algie's FMLA violation allegation as a Title VII medical disability claim, faulted Algie for not submitting that claim to the EEOC, and dismissed that claim without prejudice. The district court found that Algie's "claims concerning alleged discrimination on or after April 10, 2007, through and including his termination in September of 2007 may proceed."

After discovery, NKU moved for summary judgment on "all of Algie's remaining claims." It solely addressed Algie's perceived Title VII gender discrimination claim and Title VII retaliation

- 2 -

claim. Algie's response primarily focused on the retaliation claim addressed by NKU, but he also referenced his original FMLA claim. Additionally, he requested reconsideration of the court's decision to address his FMLA claim instead as a Title VII medical disability claim and dismiss that claim.

The magistrate judge issued a report and recommendation, which the district court ultimately adopted as the findings of fact and conclusions of law of the court. The report and recommendation analyzed Algie's Title VII gender discrimination and retaliation claims and recommended dismissal. The report and recommendation did not address Algie's request that the court reconsider permitting his FMLA claim to go forward.

## II.

### A.

We review de novo a district court's grant of summary judgment. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

### I.

First, Algie disputes the district court's conclusion that he failed to establish a prima facie case of retaliation under Title VII. Where a plaintiff presents only circumstantial evidence to support a Title VII retaliation claim, the court utilizes the same *McDonnell Douglas*/*Burdine* evidentiary framework that is used to assess claims of discrimination. *See Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).

Contrary to the district court's conclusion, Algie met his initial burden to establish a prima facie case of retaliation. NKU primarily contested whether Algie introduced sufficient probative

evidence supporting a causal connection between the protected activity and adverse employment action. As relevant to the Title VII retaliation claim, Algie alleged the protected activities, known to NKU, to include his second EEOC complaint, prosecution of his first lawsuit, his response to employee evaluation, and his mid-August request for a signed annual evaluation. Algie alleged the adverse actions to be his termination, the "needs improvement" annual evaluation, NKU's suspension of internal grievance procedures after his termination, withholding of the signed annual evaluation, and "increased harassment" in the workplace.

Specifically, the district court found Algie's termination to be the only adverse employment action at issue and the June 9, 2007, EEOC complaint to be the only protected activity. It ruled out activities before April 10, 2007, because those had already been determined non-retaliatory in Algie's prior lawsuit.

Through temporal proximity and additional circumstantial evidence of retaliation, Algie sufficiently established a causal connection for a prima facie case of retaliation under Title VII. NKU terminated Algie during the pendency of his second EEOC complaint and approximately six weeks after his first lawsuit had been dismissed. Such timing, in combination with additional circumstantial evidence of retaliation, establishes the causal nexus for a prima facie case. *See, e.g.*, *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009) (applying the Title VII retaliation standard to a Kentucky Civil Rights Act retaliation claim and finding that temporal proximity plus heightened scrutiny satisfied the causal nexus).

As to that additional evidence, Algie repeatedly alleged that he suffered different treatment than his co-workers during the time period at issue, and he pointed to specific instances in the record.

The strange long-term withholding of a signed annual evaluation also stands as significant. Because the record contains only a partially signed copy of the evaluation, Algie may not have received his signed evaluation. Notably, prior evaluations in the record show a timely turnaround, just as Algie contended. While the prima facie case depends partly on temporal proximity and otherwise relies on circumstantial evidence of retaliation, the case has sufficient vitality, under the applicable standard, for the burden to shift to NKU to articulate a nondiscriminatory reason for its actions.

II.

Algie contests the district court's alternate basis for granting summary judgment: no genuine dispute that Algie failed to show NKU's reasons for termination to be pretextual. A plaintiff may rebut a defendant's legitimate, nondiscriminatory reason and demonstrate pretext with one (or more) of three showings: (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds*, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

As the district court correctly determined, Algie fails to make the required showing that NKU's legitimate reasons for termination were not the actual reasons. NKU claimed to terminate Algie due to "resume fraud, insubordination, constant monitoring of co-workers, and certain safety concerns." Algie fails to meet his burden to demonstrate pretext.

First, Algie cannot establish resume fraud to be pretextual. Misrepresentations on an application or resume may constitute a legitimate ground for dismissal. *Moos v. Square D. Co.*, 72

F.3d 39, 43 (6th Cir. 1995). Here, NKU appears primarily concerned with Algie's application form, where in response to "Have you ever been convicted of a felony? Please explain," Algie wrote, "Yes, cultivation of marijuana, a tray of discarded seedlings were confiscated on my property after I made the decision to give up smoking about one year ago." NKU later determined that Plaintiff actually pled guilty to felony trafficking of marijuana, and his conduct involved five or more plants as to cultivation and eight ounces or more as to trafficking. The original question called for an explanation of any felony convictions, and Algie signed a certification that all of his answers were "accurate and complete," yet he obviously misrepresented his criminal history.

Similarly, Algie fails to demonstrate NKU's concern with insubordination to be pretextual. Insubordination may constitute a legitimate ground for dismissal. *Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008). The record reflects repeated complaints from Algie about a range of concerns, from gender discrimination to the qualifications of supervisors. His numerous comments about the character and qualifications of his supervisors reflect a documented pattern of insubordination. Algie has not shown NKU's stated concern to be pretextual.

Additionally, Algie fails to meet his burden to show pretext as to his monitoring of co-workers, NKU's third stated basis for termination. A critical attitude toward co-workers and disruptive behavior in the workplace may constitute a legitimate reason for discharge. *Lovelace v. BP Prods. N. Am., Inc.*, 252 F. App'x 33, 42-43 (6th Cir. 2007). Algie made all of his notes about co-workers either on breaks or at home in the evenings. He explained that, once he felt like supervisors and co-workers started retaliating against him, he thought he needed to create a record in preparation for any future litigation. However, once Algie's co-workers learned of his observing

and note-taking efforts, they professed discomfort and additional concern about his interactions with them. While Algie makes a credible showing relative to his early efforts to monitor co-workers, that showing quickly lessens in impact, once co-workers learned of Algie's monitoring and he persisted in the surveillance. His effort falls short of his burden to demonstrate NKU's basis for termination to be pretextual.

Finally, as to NKU's safety concerns as a basis for termination, Algie likewise fails to demonstrate pretext. NKU expressed strong concern about Algie's prior charges for harassment, domestic violence, and fourth-degree assault, plus law enforcement officers' original suspicion that Algie may have utilized a firearm in drug trafficking. Concern for safety may constitute a legitimate nondiscriminatory basis for termination of an employee. *See, e.g.*, *Freeman v. United Airlines*, 52 F. App'x 95, 103-04 (10th Cir. 2002). The district court found that NKU had an honest belief that Algie posed a threat to safety.

**B.**

Algie next contends that the district court erroneously refused to sanction NKU for alleged noncompliance with an order requiring production of documents. "We review a district court's decision regarding Rule 37 sanctions for abuse of discretion." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2002).

NKU should have (and indeed may have) produced some records in compliance with an order by the magistrate judge. In May 2009, Algie moved to compel responses to interrogatories and document requests, including employee records, labor chargeback sheets, and Risk Aware background checks. The magistrate judge ordered NKU to produce the performance reviews of co-

workers, labor chargeback sheets for the first three months of 2006 and 2007, and, if not previously produced as promised, the Risk Aware search and a verification page for same.

Subsequently, Algie advised the court several times that he believed NKU failed to comply with that order. Algie requested compliance with the court's prior order requiring NKU to produce documents and a subsequent extension of time for Algie to amend his response to NKU's motion for summary judgment, if necessary and appropriate based on the additional production. This motion constituted a Rule 37 motion for sanctions. When a pro se party seeks discovery sanctions, but does not cite or address Rule 37, a court may construe the motion as a Rule 37 request for sanctions. *See, e.g.*, *Cole v. Fischer*, No. 08-CV-512, 2009 WL 3049728, at *4 (W.D.N.Y. Sept. 18, 2009) (slip copy) (construing a pro se plaintiff's motion for discovery sanctions erroneously relying on Rule 11 to be a Rule 37 motion for sanctions).

The magistrate judge granted Algie's motion "to the extent that plaintiff's responsive memorandum has been fully considered by this court," but the order did not discuss or even reference alleged noncompliance by NKU with the court's prior discovery order. Algie did not explicitly appeal partial denial of his motion, but in his more general appeal of the report and recommendation concerning summary judgment, he indicated to the district court that NKU failed to produce documents that the court had ordered be produced.

The district court erred in finding that the magistrate judge's discovery order did not entitle Algie to production of the Risk Aware records. It termed Algie's interpretation of the order as "mistaken" and referenced the following discussion from the original order:

> I agree with defendant that the request for Mr. Hadesty's pre-employment work history should be denied as irrelevant, as should plaintiff's request for confirmation that defendant did not perform a criminal background check prior to the commencement of his employment. The defendant has already confirmed that fact and has further represented that it searched the Kenton Public Records in September 2007 when they learned that plaintiff had been arrested in connection with possession of a firearm.

However, later in the order the magistrate judge ordered NKU to produce records that it already promised would be forthcoming as supplemental production. Algie contends that NKU failed to comply, and whether actually the case, Algie rightly read the magistrate judge's order to require that production.

The district court also determined that Algie did not appeal the part of his motion to compel that the magistrate judge denied, and this finding, even though correct, has no bearing on whether the district court abused its discretion in denying relief. Algie sought enforcement of the magistrate judge's ordered production, not appeal of what the magistrate judge had not ordered to be produced. By denying relief to Algie based on an incorrect assessment of the motion posture, the court erred.

Nonetheless, because Algie has not shown substantial prejudice resulting from the error, we do not reverse the district court. *See Toth*, 306 F.3d at 344-45. Algie could not have established any fact not already in evidence by tendering the Risk Aware search and verification.

## C.

Finally, Algie contests the district court's dismissal without prejudice of his FMLA retaliation claim, which the court apparently construed as a Title VII medical disability claim. We agree with Algie that the claim should have been addressed, not dismissed.

Algie's original complaint states, in relevant part, "This action is brought for . . . discrimination under The Family and Medical Leave Act of 1993 . . . ." He pled, "Among the criticisms in my most recent employee evaluation for the year 2007, was that of absenteeism, despite the fact that I had a Family [and] Medical Leave Act certification on record since July of 2006, and I had not come remotely close to using my allowed absences for the year." He concludes, referencing all of his factual allegations, "These actions constitute violations of my protected rights under Title VII of the Civil Rights Act of 1964, and under The Family and Medical Leave Act of 1993."

The district court's *sua sponte* initial-screening order did not mention the FMLA. However, the order addressed a perceived Title VII medical disability claim, finding that Algie failed to exhaust his administrative remedies as to that claim. Notably, the order dismissed only the perceived Title VII claim. The FMLA retaliation claim has thus either been erroneously addressed as a Title VII claim or has not been addressed at all.

The FMLA provides a distinct retaliation claim. 29 U.S.C. § 2615(a)(2). In particular, an employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003). Private employers who violate the FMLA are liable to the employee for damages.[1] 29 U.S.C. §

---

[1] The Eleventh Amendment bars the plaintiff from obtaining damages from the state for violation of the FMLA self-care provision, *Touvell v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 422 F.3d 392, 405 (6th Cir. 2005), and a state university is covered by the state's Eleventh Amendment immunity, *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 313 (6th Cir. 2001).

- 10 -

2617(a)(1); *see, e.g.*, *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 397 & n. 1 (6th Cir. 2008) (noting damages awarded pursuant to 29 U.S.C. § 2617).

As part of his response brief at the summary judgment stage, Algie even requested the court reconsider its decision and asked for leave to pursue the FMLA retaliation claim. However, neither the magistrate judge nor the district court ever addressed that request by Algie.

Algie's persistent stance about his FMLA claim proves correct. Indeed the FMLA has no exhaustion requirement. While an employee may file an FMLA complaint with the Department of Labor, such a complaint is not required. *See* 29 U.S.C. § 2617(b); 29 C.F.R. § 825.400. The district court did not analyze Algie's FMLA retaliation claim as an FMLA claim, but should have done so.

**III.**

As described, we **AFFIRM** the district court's judgment on the Title VII retaliation claim and decision not to sanction NKU. However, we **VACATE** the initial-screening decision to dismiss the FMLA retaliation claim and **REMAND** for further proceedings.